THE NOELLE.

(District Court, E. D. Virginia. January 30, 1920.)

No. 2609.

SALVAGE ⬦30—AWARD OF $35,000 FOR SALVING STRANDED STEAMSHIP AT SEA.
A wrecking company given a salvage award of $35,000 for releasing of a steamship, worth, with cargo and freight, $1,625,000, stranded nine miles off Hatteras, a well-known dangerous locality, where the salving vessel, which was the only one available was worth $175,000, expenditure was $3,000, and practically two days' time elapsed between leaving and returning to port, and the service was promptly and efficiently rendered, and resulted in saving ship and cargo without injury.

In Admiralty. Suit for salvage by the Merritt & Chapman Derrick & Wrecking Company against the steamship Noelle. Decree for libelant.

Hughes, Little & Seawell, of Norfolk, Va., for libelant.

Robert S. Erskine, of New York City, and Hughes, Vandeventer & Eggleston, of Norfolk, Va., for respondent.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

WADDILL, District Judge. On the early morning of the 18th of June, 1918, the Noelle, a large ocean-going steamship, 3,293 tons net register laden with a cargo of 7,200 bags of sugar, bound on a voyage from Santiago, Cuba, to Queenstown, Ireland, via Hampton Roads, for bunker coal, ran aground in a dense fog on the outer Diamond Shoals, at a point some nine miles east of Cape Hatteras. As claimed by the libelant, she was fast aground her entire length; whereas the Noelle contends she was aground neither forward nor aft, but only amidship. The Noelle called for help through the station at Beaufort, N. C., to which the libelant responded. During the afternoon of the 18th, about 3 o'clock, the large wrecking tug Rescue left Norfolk for the scene of the stranding, a distance of about 150 miles, and reached the Noelle about 6 o'clock on the morning of the 19th. The Rescue was thoroughly equipped as a wrecking vessel, with a full complement of 22 men in her regular crew, and 10 additional as a salvage crew, and was worth approximately $175,000, and her expenditures in connection with the particular enterprise, including about $900 for the cost of dispatching the Relief, another vessel belonging to the libelant, from New York to the stranding, approximately $3,000. The Noelle and her cargo and freight money were worth approximately $1,625,000.

The fog cleared away about 9:30 on the morning of the 18th, and the weather from that time on until the Noelle was released about 2:45 p. m. on the next day at high tide, was good in all respects, including wind and sea. The Rescue, upon reaching the stranded vessel, immediately proceeded to take soundings, with a view of approaching the latter ship in safety, which was done, and the wrecking master of the Rescue went on board the Noelle about 8 a. m. Terms of the service to be performed were discussed, the libelant desiring a written contract upon one of the libelant company's forms, to which the master of the Noelle objected, and urged that the Lloyds form of contract be used, to which the wrecking master objected, and insisted upon his own form of contract, which was adopted; the master of the Noelle, however, inserting the words "No cure no pay" into the contract.

This preliminary having been disposed of, the Rescue immediately proceeded to cast anchor, putting out its 9,000-pound anchor, and made fast to the Noelle with a new 15-inch manila rope, 200 fathoms long, and thereupon with the aid of its officers and crew, and those of the Noelle, the latter acting under the wrecking master's orders, together with the use of the ship's steam power and engines, proceeded to effect the release of the vessel, starting to pull at 10:15 a. m., and continued so to do until high tide, about a quarter to 3 in the evening, when the ship was released and pulled clear. Subsequently, during the same afternoon, the Noelle proceeded on her voyage to Norfolk, under her own steam; no injury having been sustained by her or her cargo, and without much loss of time caused by the stranding. The Rescue accompanied her some 35 miles, to about opposite Bodies Island, where they met the Relief, which had been sent from New York to aid in the salving of the Noelle.

Upon meeting the Relief, the Rescue went back to the scene of the

disaster, in order to get the rest of its anchor and cable equipment, which had not been practicable on account of the rough sea at the time of leaving with the Noelle, and which it did the next day, arriving at Norfolk on the morning of the third day.   The Relief took no part in the enterprise, further than to come down from New York to render assistance, and to accompany the Noelle from Bodies Island to Hampton Roads.   No other assistance was available, or responded to the Noelle's call, save that on the first day a heavily laden steamer wired and offered assistance, which was declined, as she could not have materially aided in the situation.

The fact that the service rendered was a salvage service is apparent as well from the facts of the case as from the contract entered into between the parties, which properly so recognized it.   The amount that would be a proper award is solely the question at issue, and that should be determined in the light of the usual principles governing salvage awards, which, in this case, is not entirely free from difficulty. Some of the prominent elements entering into awards are not present in this case, such as dangers arising from conditions under which the service was rendered, hazards from storm, the expenditures of large amounts, and such like incidents.   Here the service was rendered with great promptness.   Only the libelant was at hand and responded to the call, the work was performed with much expedition and intelligence, the success attained was perfect, and the most important element entering into the award was the especially dangerous place at which the grounding occurred, in the open sea, in the immediate vicinity of Cape Hatteras, known to the maritime world as the graveyard of the Atlantic.

Taking into account all the facts and circumstances of this case, in the light of the principles above mentioned, and the fact that the place of stranding is one, the dangers of which are so well known in the maritime world, that even slightly increased weather conditions might in all probability have resulted in a total loss of the vessel and her cargo, and giving the libelant the benefit of whatever the use of the words "No cure no pay" may entitle them to under the circumstances in which the service was performed, the court believes that $35,000 is a proper award to make, and a decree so ascertaining will be entered on presentation.